**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

JOHN DROBOT,
                           Plaintiff,

   v.                                    No. 04-CV-1243
                                                (NAM/DRH)

JO ANNE BARNHART, Commissioner of
Social Security,
                           Defendant.

---

**APPEARANCES:**                       **OF COUNSEL:**

MURAD &, MURAD                 FREDERICK W. MURAD, ESQ.
Attorney for Plaintiff
291 Genesee Street
Utica, New York 13501

HON. GLENN T. SUDDABY       WILLIAM H. PEASE, ESQ.
United States Attorney for the      Assistant United States Attorney
   Northern District of New York
Attorney for Defendant
100 South Clinton Street
Syracuse, New York 13261-7198

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

      Plaintiff John Drobot ("Drobot") brought this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security ("Commissioner") denying his application for benefits under the Social Security Act. Drobot moves for a finding of disability and the Commissioner cross-moves for a judgment on the pleadings. Docket Nos. 4, 10. For the reasons which follow, it is recommended that the

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).

Commissioner's decision be affirmed.

## I. Procedural History

On July 7, 2003, Drobot filed an application for disability insurance benefits pursuant to the Social Security Act, 42 U.S.C. § 401 et seq. T. 74-76.[2] On September 26, 2003, the application was denied. T. 63. Drobot requested a hearing before an administrative law judge ("ALJ"), which was held before ALJ Elliot Bunce on May 25, 2004. T. 32, 67. In a decision dated June 25, 2004, the ALJ held that Drobot was not entitled to disability benefits. T. 24. On August 24, 2004, Drobot filed a request for review with the Appeals Council. T. 11. The Appeals Council denied Drobot's request for review, thus making the ALJ's findings the final decision of the Commissioner. T. 7-9. This action followed.

## II. Contentions

Drobot contends that the ALJ improperly concluded that he retained the residual functional capacity for work, the substantial weight of medical evidence supported a finding of disability, and the ALJ failed properly to evaluate Drobot's allegations of disability. The Commissioner contends that there was substantial evidence to support the determination that Drobot was not disabled.

---

[2] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. Docket No. 3.

### III. Facts

The facts contained in Drobot's brief are adopted and are not disputed by the Commissioner, except for any inferences or legal conclusions drawn therein. Def. Mem. of Law (Docket No. 10) at 1. Drobot, now thirty-six, previously worked as a custodian, maintenance laborer and supervisor, diesel mechanic, and factory laborer. T. 16, 38. Drobot has a high school education. T. 38. Drobot alleges that he became disabled on December 30, 2002 due to a back problem and asthma. T. 16.

### IV. Standard of Review

#### A. Disability Criteria

A claimant seeking disability benefits must establish that "he [or she] is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2003). In addition, the claimant's impairments must be of such severity that he or she is not able to do previous work or any other substantial gainful work considering the claimant's age, education, and work experience, regardless of whether such work exists in the immediate area, whether a specific job vacancy exists, or whether the claimant would be hired if he or she applied for work. 42 U.S.C. § 1382c(a)(3)(B) (2003).

The Commissioner uses a five-step process, set forth in 20 C.F.R. § 416.920, to evaluate SSI disability claims:

> First, the [Commissioner] considers whether the claimant is currently

3

> engaged in substantial gainful activity. If he [or she] is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his [or her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work. Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); see 20 C.F.R. § 416.920 (2003).

The plaintiff has the burden of establishing disability at the first four steps. Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 2000). However, if the plaintiff establishes that an impairment prevents him or her from performing past work, the burden then shifts to the Commissioner to determine if there is other work which the claimant could perform. Id.

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw, 221 F.3d at 131 (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. Richardson v. Perales,

402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000).

"In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." Prentice v. Apfel, No. 96 Civ. 851(RSP), 1998 WL 166849, at *3 (N.D.N.Y. Apr. 8, 1998) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)). A court, however, cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998). If the Commissioner's finding is supported by substantial evidence, it is conclusive. Bush v. Shalala, 94 F.3d 40, 45 (2d Cir. 1996).

### V.  Discussion

### A. Medical Evidence

After suffering a back injury in December 2002, Drobot sought treatment from Dr. Gregory Shankman. T. 207. On January 14, 2003, Dr. Shankman examined Drobot and recommended a 3D CT Scan. Id. Dr. Shankman also noted that Drobot should return in a week for a follow-up and would be held out of work until then. Id. The 3D CT Scan showed bulging at L4/L5 and a herniated disc in this region. T. 206. On January 21, 2003, Dr. Shankman recommended that Drobot begin physical therapy for his lower back. Id. Over the next few weeks, Drobot continued to attend physical therapy but was not able to return to work. T. 204.

On March 31 and May 8, 2003, Drobot was examined by Dr. Shankman and

5

indicated that he had "good days and bad days" managing his back pain.  T. 200, 203.  Dr. Shankman also indicated that he received authorization to perform a discogram on Drobot, which was performed shortly thereafter.  T. 199, 200.  On June 26, 2003, Dr. Shankman recommended that Drobot be referred to a pain clinic after concluding that he did not have treatment options to offer Drobot.  T. 198.  Over the next few months, Drobot continued to be examined by Dr. Shankman without major improvement.  T. 197, 228-29.  On September 24, 2003, Drobot was referred to Dr. Fadi Bejjani for pain management.  T. 229.

On October 7, 2003, Drobot was examined by Dr. Bejjani.  T. 258.  Dr. Bejjani noted that Drobot complained of acute pain in his back and appeared to be in some distress.  Id.  Over the next eight months, Drobot was regularly examined by Dr. Bejjani.  T. 259-83.  After these numerous examinations, Dr. Bejjani concluded that Drobot was "currently totally and permanently disabled and incapable of any substantially gainful activity because of all the injuries and conditions" described in his treatment notes.  T. 284.  On May 21, 2004, Dr. Bejjani completed a Social Security Medical Assessment form which discussed Drobot's limited ability to perform work-related activities.  T. 285-89.

On two separate occasions, Drobot was examined by Dr. Paul Carton, an orthopedic surgeon, in connection with his Worker's Compensation Claim.  T. 149, 249.  On April 3, 2003, Dr. Carton examined Drobot and concluded that he exhibited a temporary marked partial disability and was capable of full-time sedentary activity.  T. 152.  On March 3, 2004, Dr. Carton examined Drobot and again concluded that he exhibited a temporary marked partial disability.  T. 252.  Dr. Carton also concluded that Drobot could not return to his former occupation but could perform part-time sedentary work.  Id.

## B. Treating Physician's Rule

Drobot contends that the ALJ failed to give the opinions of his treating physicians, Drs. Shankman and Bejjani, proper weight when determining his disability.

When evaluating a claim seeking disability benefits, factors to be considered include objective medical facts, clinical findings, the treating physician's diagnoses, subjective evidence of disability, and pain related by the claimant. Harris v. R.R. Ret. Bd., 948 F.2d 123, 126 (2d Cir. 1991). Under the regulations, a treating source's opinion is entitled to controlling weight if well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2) (2003); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000). Before a treating physician's opinion can be discounted, the ALJ must provide "good reasons." Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998).

The ALJ is required to assess the following factors in determining how much weight to accord the physician's opinion: "(I) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Schaal, 134 F.3d at 503. If other evidence in the record conflicts with the opinion of the treating physician, this opinion will not be deemed controlling or conclusive, and the less consistent the opinion is, the less weight it will be given. Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999). Ultimately, the determination of disability and a claimant's inability to work rests with the Commissioner. Id. at 133-34; see 20 C.F.R. §§ 404.1527(e), 416.927(e) (2003).

Here, Drobot contends that the ALJ "totally disregarded" the opinions of his treating physicians while relying exclusively on the examinations by Dr. Carton. Pl. Mem. of Law (Docket No. 4) at 12. Dr. Bejjani concluded that Drobot was totally disabled and unable to return to his previous job. See T. 238-42. Also, in May 2004, Dr. Bejjani completed a Social Security Medical Assessment form which indicated that Drobot could lift up to ten pounds occasionally, only sit, stand, or walk for less than an hour in an eight-hour workday, occasionally grasp objects, never climb, balance, stoop, crouch, kneel, or crawl, and never push, pull, or reach. T. 285-89. The ALJ concluded that Dr. Beijiani's opinions were inconsistent with the doctor's own treatment notes. T. 20. Due to this inconsistency, and Dr. Bejjani's failure to provide a basis for the estimates that were given, the ALJ gave little weight to the assessment form. Id. Further, the estimates were given within a few months of Drobot's decompression and the record fails to demonstrate that sedentary exertion would be ruled out for twelve consecutive months. Id.

The ALJ also discussed the medical opinions of Dr. Carton, an orthopedic surgeon retained by the State Insurance Fund to conduct an independent orthopedic evaluation of Drobot. T. 19-20. On April 3, 2003, Dr. Carton examined Drobot and concluded that he "is capable of full time sedentary activity only, with no lifting over 5 pounds, and no bending from the waist . . . [Drobot] should have the ability to stand and sit as needed." T. 152. A year later, Dr. Carton again examined Drobot and concluded that he "cannot return to his former occupation" but that Drobot "could perform part time sedentary duty" and "should progress to full time work as tolerated." T. 252. Thus, there is substantial evidence to support the ALJ's finding that Dr. Bejjani's conclusions were inconsistent with other record

medical evidence.

Dr. Shankman concluded that Drobot was totally disabled and unable to return to his previous job.  See T. 19, 197-99, 214.  In January and February, 2003, shortly after the onset of the alleged disability, Dr. Shankman stated that Drobot should not work until further notice.  T. 205, 208.  The ALJ agreed with Dr. Shankman's conclusion that Drobot could not return to his previous work.  T. 19.  However, the ALJ concluded that Dr. Shankman did not identify the specific work in question that Drobot was unable perform.  Id. Further, the ALJ determined that "Dr. Shankman's records and the balance of the medical records do not rule out work within the scope of the [residual functional capacity] adopted here."  Id.  Thus, Drobot's contention that the ALJ ignored the treating physicians' opinions is without merit. Further, substantial evidence existed supporting the ALJ's rejection of the treating physicians' opinions as controlling and the ALJ properly accorded those opinions lesser weight.

Therefore, it is recommended that the Commissioner's determination on this ground be affirmed.

### C.  Subjective Complaints of Pain

Drobot contends that the ALJ's failure to obtain the medical opinion of a treating or consultative physician regarding Drobot's pain and psychiatric limitations was in error. The Commissioner contends that the ALJ properly considered Drobot's symptoms.

The basis for establishing disability includes subjective complaints of pain even where the pain is unsupported by clinical or medical findings, provided that the underlying

9

impairment can be "medically ascertained." 20 C.F.R. § 404.1529 (2003); see Snell, 177 F.3d at 135. A finding that a claimant suffers from disabling pain requires medical evidence of a condition that could reasonably produce pain. An ALJ must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be expected to be consistent with the medical and other evidence. 20 C.F.R. § 404.1529 (2003); Martone v. Apfel, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999). Pain is a subjective concept "difficult to prove, yet equally difficult to disprove" and courts should be reluctant to constrain the Commissioner's ability to evaluate pain. Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir. 1983). If there is a rejection of the claims of disabling pain, the ALJ must provide specific reasons for doing so. Saviano v. Chater, 956 F. Supp. 1061, 1071 (E.D.N.Y. 1997).

The claimant's credibility and motivation, as well as the medical evidence of impairment, are used to evaluate the true extent of the alleged pain and the degree to which it hampers the applicant's ability to engage in substantial gainful employment. See Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1978); Lewis v. Apfel, 62 F. Supp. 2d 648, 653 (N.D.N.Y. 1999). If there is conflicting evidence about a claimant's pain where the degree of pain complained of is not consistent with the impairment, the ALJ must make credibility findings. Donato v. Sec'y of HHS, 721 F.2d 414, 418-19 (2d Cir. 1983). The ALJ must consider several factors pursuant to 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3):

    (I)  [The claimant's] daily activities;

    (ii)  The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms;

    (iii) Precipitating and aggravating factors;

>   (iv)  The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate . . . pain or other symptoms;
>
>   (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of . . . pain or other symptoms;
>
>   (vi) Any measures [the claimant] use[s] or ha[s] used to relieve . . . pain or other symptoms (e.g., lying flat on [his] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
>
>   (vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2003).

Here, the ALJ concluded that the medical evidence provided a foundation for Drobot's pain, weakness, and functional loss.  T. 21.  However, the ALJ failed to find that Drobot's pain was disabling "because the objective medical findings and the opinions of record, to the extent they are consistent with those findings, do not rule out sedentary work."  Id.  The examinations and diagnostic studies by Drobot's treating physicians failed to show evidence of neurogenic or musculoskeletal compromise and the clinical findings demonstrated adequate strength and range of motion.  Id.  The ALJ also noted that there was no evidence of visits to the emergency room to treat Drobot's pain.  Id.  Further, the ALJ cited Drobot's testimony that he "participates in maintaining a household with his wife, who works.  He manages his finances, cares for his personal needs, and watches televison."  Id.  Thus, there was substantial evidence to support the ALJ's conclusion that Drobot's subjective complaints of pain were not credible.

Therefore, it is recommended that the Commissioner's determination on this ground be affirmed.

**D. Residual Functional Capacity**

Drobot contends that the ALJ improperly determined his residual functional capacity ("RFC") for work.

RFC describes what a claimant is capable of doing despite his or her impairments considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations which go beyond the symptoms.  Martone, 70 F. Supp. 2d at 150; see 20 C.F.R. §§ 404.1545, 416.945 (2003).  "RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations."  Smith v. Apfel, 69 F. Supp. 2d 370, 378 (N.D.N.Y. 1999) (citation omitted).  In assessing RFC, the ALJ must make findings specifying what functions the claimant is capable of performing, not simply making conclusory statements regarding a claimant's capabilities.  Martone, 70 F. Supp. 2d at 150.  RFC is then used to determine whether the claimant can perform his or her past relevant work in the national economy.  New York v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); see 20 C.F.R. § § 404.1545, 416.960 (2003).

Where, as here, a claimant is able to demonstrate that his or her impairments prevent a return to past relevant work, the burden then shifts to the Commissioner to prove that a job exists in the national economy which the claimant is capable of performing.  See Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000); 20 C.F.R. § 404.1560(c) (2003).  "[W]ork exists in the national economy when it exists in significant numbers either in the region where [the claimant] live[s] or in several other regions in the country." 20 C.F.R. § 404.1566(a) (2003).  The ALJ may apply the Grids or consult a vocational expert.  See Heckler v. Campbell, 461 U.S. 458, 462 (1983); Rosa v. Callahan,  168 F.3d 72, 78 (2d Cir.

1999); 20 C.F.R. pt. 404, subpt. P, App. 2 (2003). If the claimant's characteristics match the criteria of a particular grid rule, the rule directs a conclusion as to whether he or she is disabled. Pratts v Chater, 94 F.3d 34, 38-39 (2d Cir. 1996).

The Grids do not provide the exclusive framework for making a disability determination if a claimant suffers from non-exertional impairments that "significantly limit the range of work permitted by exertional limitations." Id. at 39 (quoting Bapp v. Bowen, 802 F.2d 601, 604-05 (2d Cir. 1986) (citation omitted)). Rather, the ALJ should elicit testimony from a vocational expert to determine if jobs exist in the economy that the claimant can still perform. Bapp, 802 F.2d at 604-05. Work capacity is "significantly diminished" if there is a loss of work capacity that narrows the possible range of work available and deprives the claimant of a meaningful employment opportunity. Id. at 605. Non-exertional impairments include "difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching." 20 C.F.R. § 404.1569a(c)(1)(vi) (2003). The applicability of the grids should be considered on a case-by-case basis. Bapp, 802 F.2d at 605. However, the "mere existence of a non-exertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines." Id. at 603.

Here, the ALJ found that Drobot was unable to perform his past relevant work but possessed the RFC to perform a limited range of sedentary work. T. 23. Sedentary work is defined as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in

carrying out job duties." 20 C.F.R. § 416.967(a) (2003).

The ALJ used a vocational expert to determine if other work existed in the national economy that Drobot could perform. See T. 22. The ALJ concluded that Drobot had the RFC

> to perform work that does not require: lifting over five pounds, sitting over six hours in an eight-hour day; standing more than two hours in an eight-hour day; occasional stooping, any climbing, balancing, kneeling, crouching, or crawling; or exposure to poor ventilation or extremes of dust, humidity, or temperature; and that allows the alternating of sitting and standing and the use of an assistance device to walk.

T. 23. The ALJ then asked the vocational expert to consider an individual of Drobot's age, education, work experience, and RFC. T. 22. The vocational expert "testified that such an individual could work as a lamp-shade assembler (150,000 jobs in the national economy), surveillance system monitor (500,000 jobs in the national economy), and inspector hand packers (200,000 jobs in the national economy)." Id. However, Drobot's treating physicians, Drs. Bejjani and Shankman, both concluded that Drobot was "totally disabled." T. 214, 238-42. Drobot claims that the ALJ's failure to credit the conclusions of these physicians was clear error.

The regulations permit the ALJ to rely on the opinions of nonexaming sources to override treating sources' opinions as long as they are supported by medical evidence in the record. See 20 C.F.R. §§ 404.1527(f), 416.927(f); see also Schisler v. Sullivan, 3 F.3d 563, 568 (2d Cir. 1993). Although some evidence exists that Drobot is unable to perform sedentary work, there is substantial evidence to support the ALJ's conclusion that Drobot could perform other work in the national economy. As discussed above, Dr. Carton

14

concluded that Drobot could perform part-time sedentary work.  See Section V(B) supra.  Further, the vocational expert concluded that an individual with similar age, education, work experience, and RFC could perform jobs in the national economy.  T. 22.  Thus, the ALJ's failure to credit the conclusions of Drobot's treating physicians was not in error because there was substantial medical evidence to support the conclusions of the independent orthopedic surgeon and vocational expert.

Accordingly, it is recommended that the Commissioner's determination in this regard be affirmed.

## VI. Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that the decision denying disability benefits be **AFFIRMED**, Drobot's motion for a finding of disability (Docket No. 4) be **DENIED**, and the Commissioner's cross-motion (Docket No. 10) be **GRANTED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85 (2d Cir. 1993) (citing Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

DATED: December 14, 2006
      Albany, New York

_David R. Homer_
United States Magistrate Judge